IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VYACHESLAV IGOREVICH PENCHUKOV,<br><br>a/k/a "Vyacheslav Igoravich Andreev,"<br>"Tank," "Father", "TopBro," and<br>"Zevs"<br><br>Defendant. | District of Nebraska<br>Criminal No. 4:11-CR-3074<br>4:24CR3021<br>Eastern District of North Carolina<br>Criminal No. 7:22-CR-87<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the Plaintiff, United States of America, through the United States Attorney's Office for the District of Nebraska, the United States Attorney's Office for the Eastern District of North Carolina, and the Computer Crime and Intellectual Property Section; and Defendant, Yvacheslav Igorevich Penchukov, also known as Vyacheslav Igoravich Andreev, individually and through counsel Stuart J. Dornan, counsel for Defendant in the District of Nebraska, and Halerie Costello and Jean-Paul Eduard Jacquet-Freese, counsels for Defendant in the Eastern District of North Carolina, as follows:

I

## THE PLEA

A.   CHARGES & FORFEITURE ALLEGATIONS.

Defendant agrees to plead guilty to Count One of the Third Superseding Indictment filed in the District of Nebraska (Criminal No. 4:11-CR-3074), which charges a violation of 18 U.S.C. § 1962(d), and Count Two of the Indictment filed in the Eastern District of North Carolina (Criminal No. 7:22-CR-87), which charges a violation of 18 U.S.C. § 1349. Defendant further admits the forfeiture allegations as set forth in the Third Superseding Indictment filed in the District of Nebraska and the Indictment filed in the Eastern District of North Carolina.

B.   DISMISSAL OF COUNTS.

In exchange for Defendant's plea of guilty as indicated above, the United States agrees as follows: The United States will move to dismiss, as to the Defendant, the Indictment, the

Superseding and Second Superseding Indictments, and the remaining counts in the Third Superseding Indictment, all filed in the District of Nebraska, and the remaining count of the Indictment filed in the Eastern District of North Carolina, at the time of sentencing.

## II
## TRANSFER FOR PLEA AND SENTENCE

The parties agree to transfer the charges pending in the Eastern District of North Carolina against Defendant, under the caption United States of America v. Vyacheslav Igoravich Andreev (Criminal No. 7:22-CR-87), to the District of Nebraska (Criminal No. 4:11-CR-3074) for plea and sentence, pursuant to Federal Rule of Criminal Procedure 20, and will execute any documents necessary for this transfer.

## III
## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that he is pleading guilty to two offenses and that the first offense, Count One of the Third Superseding Indictment filed in the District of Nebraska, which charges a violation of 18 U.S.C. § 1962(d), has the following elements:

1. An enterprise existed as alleged in the Third Superseding Indictment;
2. The enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;
3. Defendant was or would be employed by or associated with the enterprise;
4. Defendant and at least one other person reached an agreement or came to an understanding to conduct or participate in the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity; and
5. Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in existence, and at the time Defendant joined in the agreement or understanding he specifically intended to otherwise participate in the affairs of the enterprise.

Defendant further understands that the pattern of racketeering activity alleged in the Third Superseding Indictment consisted of multiple acts indictable under 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), 1028 (identity theft), and 1029 (fraud in connection with access devices).

Defendant further understands that the second offense to which Defendant is pleading guilty, Count Two of the Indictment filed in the Eastern District of North Carolina, which charges a violation of 18 U.S.C. § 1349, has the following elements:

1. Defendant and at least one other person reached an agreement to devise or participate in a scheme to obtain money or property by means of materially false or fraudulent pretenses, representations or promises, as alleged in Count Two of the Indictment;

2. Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

3. At the time Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

B. ELEMENTS UNDERSTOOD AND ADMITTED—FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of both crimes and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed, with respect to the Third Superseding Indictment filed in the District of Nebraska:

1. Defendant was part of a racketeering enterprise, referred to by United States law enforcement authorities as the Jabber Zeus Crew.

2. Defendant and his co-conspirators employed malicious software, known as "Zeus" or "Zbot," to infect thousands of computers with malicious software and obtain information necessary to access the bank accounts of victim companies throughout the United States, typically small businesses and nonprofit organizations. When a computer was infected with the Zeus malware, it kept track of user names, passwords, and all other information entered into a bank's "log in" web page. When employees of the victims entered this information, the Zeus malware collected it and sent it to members of the enterprise located in the Ukraine.

3. Defendant and his co-conspirators would then use that stolen information to log into the web sites of victims' banks, often posing as employees of the victims. With that access, Defendant and his co-conspirators would make electronic payments from the victims' accounts using the Automated Clearinghouse, or "ACH,"

3

network, in some cases emptying the victim accounts completely. The ACH network is a special-purpose computer network, used only by banks, that is used to clear checks and process other types of payments.

4. Defendant and his co-conspirators typically sent the ACH payments to individuals acting as "money mules." These mules received the ACH payments in their own accounts, and then wired that money to overseas accounts controlled by Defendant's co-conspirators. Defendant played a crucial leadership role in this scheme by directing and coordinating the exchange of stolen banking credentials and money mules. Defendant also received alert messages which provided notification once a bank account had been compromised, thereby facilitating his ability to quickly direct and coordinate the conspiracy's response to transfer funds from the victim's accounts and into the control of the conspiracy.

5. Beginning sometime in or about May 2009 and ending in or about May 2010, Defendant and his co-conspirators communicated using their own instant messaging server, known as the "incomeet" server (after its domain name). Defendant used that same server to receive "alert" messages from infected machines that contained compromised account credentials.

6. The incomeet server, which was located in the United States, was configured to log the text of every message sent through it, and to associate all of those messages with the nickname of the person who sent it and the precise date and time. Through the user of four search warrants, executed at different times during the course of the investigation, the government obtained those logs. Participants in the logged chat identified themselves by nicknames. Defendant's nickname was "tank."

7. On or about July 28, 2009, Defendant and a co-conspirator exchanged chat messages regarding transfers of funds from a bank account belonging to Doll Distributing ("Doll"). On or about July 29, 2009, Doll reported that two fraudulent ACH payments, totaling $59,222.00, were made from its bank account. That account was maintained with a bank headquartered in Omaha, Nebraska, named First National Bank of Omaha, a financial institution insured by the FDIC that offered online banking services through computer servers located in Nebraska. The ACH payments were made using First National Bank of Omaha's online banking

system, which meant that someone, falsely claiming to be a Doll employee, initiated the payments. The money transferred from Doll's bank account was sent to two money mules in the United States.

8. On or about September 28, 2009, Defendant and his co-conspirators caused malicious software to be installed, without authorization, on a computer used by Parago, Inc. ("Parago"). On or about September 28, 2009, Defendant and his co-conspirators used stolen access information to attempt to cause First National Bank of Omaha, to transfer funds out of a bank account belonging to Parago and into one or more bank accounts designated by the conspiracy. Also on or about September 28, 2009, Defendant transmitted login credentials for an employee of Parago to a co-conspirator. These included the employee's username, full password, and the answers to two security questions.

9. On or about March 3, 2010, Defendant and his co-conspirators caused malicious software to be installed, without authorization, on a computer used by Husker AG, LLC ("Husker"), a business located in Plainview, Nebraska. On or about March 3, 2010, Defendant and his co-conspirators received the username and password of an employee of Husker and used these stolen credentials to attempt to cause Union Bank and Trust, a financial institution insured by the FDIC and located in Lincoln, Nebraska, to transfer funds out of a bank account belonging to Husker to two money mules in the United States.

10. After Defendant was initially charged for his role in the Jabber Zeus Crew, and in or around 2015, Defendant changed his legal name to Vyacheslav Igoravich Andreev.

Defendant further agrees that the following facts are true and undisputed, with respect to the Indictment filed in the Eastern District of North Carolina:

1. Defendant and his co-conspirators distributed spam emails containing malicious attachments that, when clicked, provided unauthorized access to a victim computer.

2. The attachments contained IcedID, also known as Bokbot, which was a form of malicious software that collected and transmitted personal information from the users of infected computers, including information necessary to enter users' bank

accounts. IcedID also provided access to infected computers for other forms of malicious software, including ransomware.

3. Defendant and his co-conspirators, through IcedID, identified when victims attempted to communicate with websites of interest, such as websites for major financial institutions, and redirected the victims to websites controlled by members of the conspiracy that appeared to be the legitimate websites.

4. Defendant and his co-conspirators used the redirected websites to fraudulently obtain personal information from the users of infected computers, such as information necessary to enter users' bank accounts.

5. Defendant and his co-conspirators transmitted and stored personal information from the users of infected computers to one of a number of online panels controlled by the conspirators.

6. Defendant and his co-conspirators used the victims' personal information to obtain access to financial and other victim accounts and transfer money to accounts controlled by the conspirators.

7. Defendant and his co-conspirators used access to victim computers to download other forms of malicious software, including ransomware, onto those victim computers.

8. From an unknown date, but no later than in or about November 2018 until in or about February 2021, Defendant managed a botnet that consisted of victim computers infected by IcedID.

9. As part of Defendant's management of a botnet for IcedID, Defendant maintained a spreadsheet of the income and expenses from IcedID in 2021. This spreadsheet included a total income of over USD $19.9 million for that year.

10. From an unknown date, but not later than in or about November 2018 until in or about November 2021, Defendant used IcedID panel information to steal money from victim accounts at two financial services firms.

11. The IcedID panels were accessible at domain names, which were knowingly registered in a manner that prevented the effective identification of or contact with the person who registered the domain names, including under false names.

12. On or about August 10, 2020, a member of the conspiracy caused IcedID malware to be transmitted to an email account belonging to a victim, which was received in Wilmington, North Carolina.

13. On or about October 28, 2020, the IcedID malware was used to obtain unauthorized access to the University of Vermont Medical Center ("UVMMC"). The IcedID malware distributed ransomware that encrypted significant portions of the hospital's computer networks. As a result, the hospital was unable to provide many critical patient services for over two weeks, which created a risk of death or serious bodily injury for patients. The cost to UVMMC of responding to the incident, which included conducting a damage assessment, restoring its data, programs, systems, and information to its condition prior to the incident, and revenue lost, costs incurred, and other damages incurred because of the interruption of service, amounted to at least $30 million.

14. On or about February 25, 2021, a member of the conspiracy caused IcedID malware to be transmitted to an email account belonging to a victim, which was received in Cary, North Carolina.

## IV

## PENALTIES

A. Defendant understands that the first crime to which Defendant is pleading guilty, Count One of the Third Superseding Indictment filed in the District of Nebraska, which charges a violation of 18 U.S.C. § 1962(d), carries the following penalties:

1. A maximum twenty years in prison.
2. A maximum $250,000 fine or the greater of twice the gross gain or twice the gross loss.
3. A mandatory special assessment of $100.
4. A term of supervised release of not more than three years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

7

B. Defendant understands that the second crime to which Defendant is pleading guilty, Count Two of the Indictment filed in the Eastern District of North Carolina, which charges a violation of 18 U.S.C. § 1349, carries the following penalties:

1. A maximum twenty years in prison.
2. A maximum $250,000 fine or the greater of twice the gross gain or twice the gross loss.
3. A mandatory special assessment of $100.
4. A term of supervised release of not more than three years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## V

## LIMITATION OF PLEA AGREEMENT

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, the United States Attorney's Office for the Eastern District of North Carolina, and the Criminal Division of the United States Department of Justice, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory, authorities.

## VI

## PARTIES' SENTENCING RECOMMENDATIONS

A. <u>SENTENCING GUIDELINE CALCULATIONS</u>.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

For Count One of the Third Superseding Indictment filed in the District of Nebraska, which charges a violation of 18 U.S.C. § 1962(d), the parties will recommend to the Court that the following provisions of the United States Sentencing Guidelines ("U.S.S.G.") apply:

1. The base offense level is either nineteen or the offense level applicable to the underlying racketeering activity, whichever is greater, pursuant to U.S.S.G. § 2E1.1(a). The parties agree that the offense level applicable to the underlying racketeering activity is governed by U.S.S.G. § 2B1.1 and the offense level pursuant to U.S.S.G. § 2B1.1 is greater than nineteen as described by the total calculations of paragraphs two through six below.
2. The base offense level of the underlying racketeering activity is seven because the offense of conviction is referenced to U.S.S.G. § 2B1.1 and has a statutory maximum term of imprisonment of twenty years or more, pursuant to U.S.S.G. § 2B1.1(a)(1).
3. Defendant should receive a twenty-offense level increase because the offense involved an intended loss of more than $9.5 million but less than $25 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(K).
4. Defendant should receive a two-offense level increase because the offense involved ten or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i).
5. Defendant should receive a two-offense level increase because a substantial part of the fraudulent scheme was committed from outside the United States and the offense otherwise involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means, pursuant to U.S.S.G. §§ 2B1.1(b)(10)(B) and (C).
6. Defendant should receive a two-offense level increase because the offense involved the trafficking of unauthorized access devices, pursuant to U.S.S.G. § 2B1.1(b)(11)(B)(i).
7. Defendant should receive a four-offense level increase because of Defendant's participation as an organizer or leader of criminal activity in the offense of conviction that involved five or more participants or was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(a).

For Count Two of the Indictment filed in the Eastern District of North Carolina, which charges a violation of 18 U.S.C. § 1349, the parties will recommend to the Court that the following provisions of the Sentencing Guidelines apply:

1. The base offense level is seven because the offense of conviction is referenced to U.S.S.G. § 2B1.1 and has a statutory maximum term of imprisonment of twenty years or more, pursuant to U.S.S.G. § 2B1.1(a)(1).
2. The parties agree that the gain that resulted from the offense should be used as an alternative measure of loss because the offense caused a loss, but the loss reasonably cannot be determined, pursuant to U.S.S.G. § 2B1.1(b)(1) and application note 3(B).
3. Defendant should receive a twenty-offense level increase because the gain that resulted from the offense was more than $9.5 million but less than $25 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(K).
4. Defendant should receive a two-offense level increase because the offense involved ten or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i).
5. Defendant should receive a two-offense level increase because a substantial part of the fraudulent scheme was committed from outside the United States and the offense otherwise involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means, pursuant to U.S.S.G. §§ 2B1.1(b)(10)(B) and (C).
6. Defendant should receive a two-offense level increase because the offense involved the trafficking of unauthorized access devices, pursuant to U.S.S.G. § 2B1.1(b)(11)(B)(i).
7. Defendant should receive a two-offense level increase because the offense involved the conscious or reckless risk of death or serious bodily injury, pursuant to U.S.S.G. § 2B1.1(b)(16)(A).
8. Defendant should receive a four-offense level increase because of Defendant's participation as an organizer or leader of criminal activity in the offense of conviction that involved five or more participants or was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(a).
9. Defendant should receive a two-offense level increase because the statutory enhancement under 18 U.S.C. § 3559(g)(1) applies, pursuant to U.S.S.G. § 3C1.4. Section 3559(g)(1) applies because the offense of conviction is a felony and

Defendant or a conspirator knowingly falsely registered a domain name and knowingly used that domain name in the course of the offense.

Assuming Defendant is found to be entitled to an offense level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce Defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

B.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if Defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property seized or forfeited in connection with this case.

**The parties further agree Defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that Defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that Defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence Defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that Defendant may not request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such

downward adjustments, departures, and sentence reductions not set forth in Section VI, paragraph A above.

D. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraphs of this agreement are true and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offenses under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

E. IMMIGRATION CONSEQUENCES AND STIPULATED REMOVAL.

Defendant is aware of and acknowledges that his plea pursuant to this plea agreement may have immigration consequences up to and including possible deportation.

If Defendant is not a United States citizen or national either before or immediately following sentencing, Defendant agrees to an order of removal from the United States entered by the Executive Office for Immigration Review or the authorized Department of Homeland Security official. Defendant understands Defendant will not be removed until Defendant has served any criminal sentence imposed in this or any other case. Defendant further waives any right to appeal, reopen, or challenge the removal order.

F. RESTITUTION.

Defendant agrees to the following regarding Restitution:

1. The amount of restitution ordered by the Court shall include all relevant conduct, including, but not limited to, all charged and uncharged criminal conduct alleged in the Third Superseding Indictment filed in the District of Nebraska and the Indictment filed in the Eastern District of North Carolina, and not limited to the counts of conviction.

2. Defendant shall pay restitution in an amount to be determined by the Court. Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. Defendant further agrees that the Court may defer the imposition of restitution for a period not to exceed 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

3. Defendant also shall pay the Special Assessment of $100 per count of conviction by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.

4. Restitution and Assessment payments shall be made payable to the Clerk of the U.S. District Court for the District of Nebraska.

5. The District Court Clerk will subsequently disburse Defendant's restitution payments to the victim(s).

6. Court imposed monetary penalties are due immediately and subject to immediate enforcement by the United States. 18 U.S.C. § 3613.

7. Any Court ordered schedule for restitution payments is merely a minimum payment obligation, and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (*see* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§ 3613, 3664(m)).

8. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

9. Defendant will provide all of Defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

10. At the request of the U.S. Attorney's Office ("USAO"), Financial Litigation Program ("FLP"), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

11. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence, and will execute any Release for such information upon request.

12. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

13. Defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

14. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

15. If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

## VII

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant hereby knowingly and expressly waives any and all rights to appeal Defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which Defendant could assert to the charges or to the Court's entry of Judgment against Defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

    a.    A claim of ineffective assistance of counsel.

    b.    A right to file a motion under 18 U.S.C. § 3582(c)(1)(A);

          1.    the general right to file a compassionate release motion;

          2.    the right to file a second or successive such motion; or

          3.    the right to appeal the denial of a compassionate release.

Defendant further knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except: (a) the right to timely challenge Defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which Defendant is agreeing to plead guilty fails to state a crime; and (b) the right to seek post-conviction relief based on ineffective assistance of counsel.

If Defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by Defendant pursuant to this plea agreement in any such prosecution.

## VIII

## BREACH OF AGREEMENT

Should it be concluded by the United States that Defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, Defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement

otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by Defendant.

In the event Defendant commits a crime or otherwise violates any term or condition of this plea agreement, Defendant shall not, because of such violation of this agreement, be allowed to withdraw Defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## IX

## SCOPE OF AGREEMENT

A.  This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B.  By signing this agreement, Defendant agrees that the time between the date Defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. Defendant stipulates that such period of delay is necessary in order for Defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of Defendant and the public in a speedy trial.

C.  The United States may use against Defendant any disclosures Defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit Defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D.  Pursuant to 18 U.S.C. § 3013, Defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which Defendant pleads guilty. Defendant will make this payment at or before the time of sentencing.

E.  By signing this agreement, Defendant waives the right to withdraw Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). Defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, Defendant understands that if the court rejects the plea agreement, whether or not Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and Defendant shall be subject to prosecution for any

federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F.  This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## X
## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements, or conditions have been entered into other than those set forth in this agreement (except for any supplemental agreement, to be filed under seal, signed the same date as this agreement), and none will be entered into unless in writing and signed by all parties.

## XI
## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XII
## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsels' representation.

UNITED STATES OF AMERICA
SUSAN T. LEHR
ACTING UNITED STATES ATTORNEY
DISTRICT OF NEBRASKA

2/12/2024
Date

JOHN E. HIGGINS
ASSISTANT U.S. ATTORNEY
DISTRICT OF NEBRASKA

2/12/2024
Date

WILLIAM A. HALL, JR.
FRANK LIN
TRIAL ATTORNEYS
CRIMINAL DIVISION, U.S. DEPT. OF JUSTICE

| Date | |
|---|---|
| 2/12/2024 | UNITED STATES OF AMERICA<br>MICHAEL F. EASLEY, JR.<br>UNITED STATES ATTORNEY<br>EASTERN DISTRICT OF NORTH CAROLINA<br><br>*/s/ Bradford M. Devoe*<br>BRADFORD M. DEVOE<br>ASSISTANT U.S. ATTORNEY<br>EASTERN DISTRICT OF NORTH CAROLINA |
| 2/12/2024 | */s/ Ryan K.J. Dickey*<br>RYAN K.J. DICKEY<br>TRIAL ATTORNEY<br>CRIMINAL DIVISION, U.S. DEPT. OF JUSTICE |
| 2.9.24 | */s/*<br>VYACHESLAV IGOREVICH PENCHUKOV, also known as VYACHESLAV IGOREVICH ANDREEV<br>DEFENDANT |
| 2-9-24 | */s/*<br>STUART J. DORNAN<br>COUNSEL FOR DEFENDANT<br>DISTRICT OF NEBRASKA |
| 2/12/24 | */s/*<br>HALERIE COSTELLO<br>JEAN-PAUL EDUARD JACQUET-FREESE<br>COUNSEL FOR DEFENDANT<br>EASTERN DISTRICT OF NORTH CAROLINA |